**SO ORDERED.**

**SIGNED March 21, 2006.**



_____
GERALD H. SCHIFF
UNITED STATES BANKRUPTCY JUDGE
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

IN RE:

HOANG V. NGUYEN and                               CASE NO. 05-53751
THAO K. LAM,

   Debtors                                       Chapter 11

-----------------------------------------------------------------
                        MEMORANDUM RULING
-----------------------------------------------------------------

Hoang V. Nguyen and Thao K. Lam ("Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code[1] on October 10, 2005, and on that day an order for relief was duly entered. The Debtors remained in possession of its property as a debtor in possession as no chapter 11 trustee was appointed.

---

[1] Title 11, United States Code. References herein to sections of the Bankruptcy Code will be shown as "section ___."

The Debtors own and operate two shrimp boats in the Gulf of Mexico. Those vessels, the Seagull I and the Seagull III, are the subject of the Debtors' **MOTION TO DETERMINE VALUATION OF ASSET** ("Motion") filed on January 31, 2006. A hearing on the Motion as to the Seagull I was held on March 7, 2006. After taking evidence and hearing from counsel, the Motion was taken under advisement.

Caterpillar Financial Services Corporation ("Caterpillar") holds a security interest in the Seagull I resulting from the execution by the Debtors of a Promissory Note and Preferred Ship Mortgage on October 18, 2000, in the principal amount of $700,000. Caterpillar claims the amount due on the promissory note as of October 15, 2005, exceeds $714,000[2]. Caterpillar also asserts that the "liquidation value" of the Seagull I is between $375,000 and $425,000[3].

Mr. John Wiggins, an expert in marine surveying (appraising), was the sole witness who testified at the hearing. He described the vessel as being in fair to good condition. He indicated that the market for vessels of this kind and in this condition was

---

[2]While Caterpillar has yet to file a proof of claim in the case, paragraph 3 of its Motion for Relief From Stay and for Adequate Protection (Docket No. 60) alleges a principal balance of $667,712.89, accrued interest of $36,395.11, and late charges of $10,727.58.

[3]<u>Ibid</u>.

2

depressed as a result of high fuel costs and low shrimp prices. He further indicated that there were many vessels of this kind and condition on the market.

Mr. Wiggins' opinion of value is as follows:

- Market value, i.e., the price of a similar vessel on today's market - $240,000

- Liquidation value, i.e., the amount obtainable at a "quick sale" - $220,000

- Replacement value, i.e., the cost of a new vessel - $850,000

Pursuant to section 506(a), a creditor holding a security interest in property of the estate is secured to the extent of the value of the collateral securing such claim and is unsecured for the balance. The last sentence of section 506(a) provides that:

> Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

While the court has no statistics to cite, this provision has probably been at the heart of as many contested hearings in bankruptcy court as any other section of the Bankruptcy Code, at least until the Supreme Court's decision in Associates Commercial Corporation v. Rash, 117 S.Ct. 1879 (1997). Although Rash arose in the context of a chapter 13 case, its application in chapter 11 cases is not in question. See, e.g., Matter of T-H New Orleans

3

Ltd. Partnership, 116 F.3d 790, 799 (5th Cir. 1997)("Value under § 506 is to be determined in light of the purpose of the valuation and of the proposed disposition or use of the property.").

While <u>Rash</u> did not resolve all ambiguity in the process for determining secured claims, it did indicate that replacement value was the appropriate standard where retention of the collateral was envisioned.  Replacement value in the <u>Rash</u> context, is that price "a willing buyer and a willing seller would pay to obtain property of a like age and condition. <u>Associates Commercial Corp. v. Rash</u>, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997)."  <u>In re Caple</u>, 2005 WL 1287991 (Bkrtcy. M.D. N.C.)

Based upon the testimony of Mr. Wiggins, and in accordance with the directives of section 506(c) and <u>Rash</u>, the court fixes the value of the Seagull I for plan confirmation purposes at $240,000, which was his estimate of "market value."  Although his estimate of "replacement value" was $800,000, his definition of market value is the equivalent of replacement value as contemplated by <u>Rash</u>.

**IT IS SO ORDERED.**

###

4